BESSIE K. PHILLIPS DENNIS v. GUY W. WOOD, Appellant.—No. 40432.
—211 S. W. (2d) 470.

Division Two, April 12, 1948.

Opinion Modified and Motion for Rehearing or to Transfer to Banc Overruled, May 27, 1948.

E. R. Morrison, Henry W. Buck and W. H. Hoffstot for appellant; Morrison, Nugent, Berger, Hecker & Buck of counsel.

*John G. Madden, Harry R. Freeman* and *Ralph M. Russell* for respondent; *Madden, Freeman, Madden & Burke* of counsel.

888

[471] BOHLING, C.—Bessie K. Phillips Dennis instituted this action against Guy W. Wood for $20,000 damages on account of injuries suffered while a passenger in defendant's automobile in a collision with a Ford automobile in the state of Kansas. The law of Kansas applies. Mrs. Dennis was single at the time of her injury, being Miss Phillips. The jury returned a verdict for defendant. Thereafter, the court sustained plaintiff's motion for a new trial on the ground the verdict was against the weight of the evidence and for error in one of defendant's instructions. Defendant appeals and presents the principal contention that plaintiff failed to make a submissible case on two grounds: First, that plaintiff was defendant's guest and under the Kansas statute defendant was not guilty of "gross and wanton negligence." Second, that plaintiff was guilty of contributory negligence as a matter of law.

The Kansas automobile guest statute (Sec. 8-122b, Kan. G. S. 1935) reads: "That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the [472] gross and wanton negligence of the operator of such motor vehicle."

The issue under the statute turns on whether plaintiff was a guest or a fare-paying passenger as plaintiff claims defendant was guilty of ordinary negligence and presents no contention involving "gross and wanton negligence."

The Supreme Court of Kansas has not ruled the precise issue here; i. e., the effect of a share-the-ride agreement during World War II upon the Kansas guest statute. Defendant stresses the portion italicized by the writer in the following from Pilcher v. Erny, 155 Kan. 257, 124 P. 2d 461, 464[4]: "It would not do to exempt carriers for hire from liability for such damages so the provision making an exception in cases where the guest paid for his transportation was written into the statute. *The intention was, however, that the exception should apply only where the payment was the chief motivating cause for the trip or carriage,* not to a case such as we have here where the trip would have been made in any event by the driver of the car, and the plaintiff was in the car, in the main, on

account of a desire on the part of the defendant to be accommodating and to extend the hospitality of his car to her and her son." The facts involved were: Defendant had a paper route which took him from Hutchinson to Stafford and other points. Plaintiff, a seamstress of Hutchinson, had repaired defendant's coat, the charge being $1.25. When defendant asked her if she cared to go to Stafford, she answered in the affirmative for herself and her son, and said to let the $1.25 go on the expenses of the trip. Defendant answered he was going anyway and would take them without charge. She insisted upon applying the $1.25 on the expenses and he answered, if she wanted it that way, all right. She was injured while riding with him on the way from her residence to "Ma Lundreys" to get some sandwiches "for the mutual pleasure of plaintiff and defendant," which was no part of the proposed trip to Stafford. The two intended coming back to a skating rink for plaintiff's son. The quotation supra is in connection with a discussion as though the injury occurred on the trip from Hutchinson to Stafford and has been followed in later Kansas cases, including Vogrin v. Bigger, 159 Kan. 271, 154 P. 2d 111, 113, also stressed by defendant. Srajer v. Schwartzman (Kan.), 188 P. 2d 971, 974[2, 3], is a late case following the Pilcher and Vogrin cases. Plaintiff there attempted to avoid the guest statute by establishing a "joint venture" between two cattle owners on the theory they had agreed to ship a "mixed load of cattle" to a sales pavilion for sale for their mutual benefit in saving costs of transportation. One, Srajer, died as the result of injuries received on the way to the sale while riding in the other's coupe. The men were not joint owners of the cattle but each owned the particular cattle coming from his farm, and the joint enterprise, if one existed under the evidence, was restricted to the transportation of the cattle and did not extend to Schwartzman's transportation of Srajer. However, in the course of that opinion, the court said: "We agree with appellant's contention that payment for transportation in money is not necessary in order to keep a passenger from being a guest passenger, within the meaning of that statute. But there must be a substantial consideration of some sort moving to the operator or owner of the vehicle." This is in harmony with the earlier cases of Elliott v. Behner, 146 Kan. 827, 73 P. 2d 1116, 1119[2]; and Le Clair v. Hubert, 152 Kan. 706, 107 P. 2d 703, 704[1], which are distinguished in Vogrin v. Bigger, supra, on the facts.

Plaintiff and defendant resided in Kansas City, Missouri. They were employees of the Sunflower Ordinance Plant near De Soto, Kansas, 35 miles southwest of Kansas City. When first employed, defendant drove back and forth alone, but authorities in charge of the War effort informed him he would have to carry passengers to secure the necessary ration stamps for gasoline and tires. He agreed to this, and, in addition to his "A" ration book, he received a "C"

ration book for gasoline, having 34 to 38 stamps, each good for five gallons of gasoline. A round trip required five gallons of gasoline. In September, 1944, or prior, plaintiff, with the aid of the Plant Transportation office, made arrangements with defendant to ride to and from the Plant [473] and Kansas City, and agreed to and did pay defendant $3 a week and sign the ration application blanks for gasoline and tires when periodically requested by defendant. The $3 was reduced to $2.50 when the Plant went on a 5-day schedule. On the morning of the accident, there were six persons in defendant's 1940 Plymouth coach—defendant and five fare-paying passengers, each paying on the same basis as plaintiff. Defendant testified that the "C" ration book was issued for hauling passengers between Kansas City and the Plant; that he would not have been able to make these trips in his automobile on an "A" or "B" ration book or without these or other passengers of his car executing the gasoline and tire ration application blanks; and that he would not have hauled the passengers unless he received compensation therefor.

Neither defendant nor any of his fare-paying passengers could have made the trip in defendant's automobile if the passengers had not cooperated with him in signing the ration application blanks for the necessary gasoline and tires as well as making the $3 or $2.50 weekly payment to defendant. A finding is warranted that the chief motivating cause for defendant transporting plaintiff and other passengers was the consideration received therefor, and that plaintiff's transportation was not for the mutual pleasure of plaintiff and defendant or for a mere desire on the part of defendant to accommodate plaintiff in the use of his automobile. Defendant's cases are instances wherein the social feature was the moving cause for plaintiff's presence in the car. Under the facts of the instant case defendant transported plaintiff as the result of a business transaction, and the reason for a broad construction of the statute to extend it to persons not within its letter and to objectives beyond the evils it seeks to remedy is absent under the facts of this case. See 5 Am. Jur. 634, sec. 239; 2 Restatement, Torts, 1272, sec. 490; 4 Blashfield, Cyclopedia of Automobile Law (1946), secs. 2292, 2313; Coerver v. Haab, 23 Wash. 2d 481, 161 P. 2d 194, 161 A. L. R. 909, 917; Bookhart v. Greenlease-L. Motor Co., 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359, 1365; Annotations, 146 A. L. R. 640; 95 A. L. R. 1180.

██ Defendant contends plaintiff's testimony established that she was guilty of contributory negligence as a matter of law, barring recovery, in that she was cognizant of the developing danger and failed to warn defendant thereof. Most but not all of the Kansas cases relied upon by defendant are cases where the plaintiff failed to give any warning of the peril to the operator of the automobile. Crowe v. Moore, 144 Kan. 794, 62 P. 2d 846; Earhart v. Tretbar, 148 Kan.

42, 80 P. 2d 4, 6[1-3] (wherein the jury determined the facts); and Curtiss v. Fahle, .157 Kan. 226, 139 P. 2d 827, 834. The last two cases cite other cases relied upon by defendant.

Soon after 7:00 o'clock on the morning of September 25, 1945, defendant and the five passengers left Kansas City in his Plymouth coach over .Kansas Highway No. 10, an ordinary 18-foot concrete slab, for the Plant where they were due to report at 8:00 o'clock. Defendant was driving; Helen G. Luckey was sitting in the center, and plaintiff was on the outside in the front seat. The other three passengers were in the back seat. About two or three miles east of Zarah, Kansas, the Plymouth and a 1936 Ford coupe belonging to Harold L. Norman, driven by 18-year old Larry Patterson, collided between 7:30 and 7:40 A. M. It had rained during the night. There was a light mist that morning. The windshield wipers on the Plymouth were in use. The pavement was described as damp or sweaty but neither. car skidded. It was daylight but the lights of both cars were on. The visibility was all right. The Plymouth had proceeded in a southerly direction, entered upon a right hand curve—to the west—and was just coming out of the curve and onto a straightaway headed west on an upgrade at the time of the collision. A westbound car enters the curve on a level stretch but about half-way through the curve encounters an upgrade, the crest of the grade being a short distance west of the curve. Plaintiff said the curve was very bad and between 700 to 800 feet long. Plaintiff had ridden with defendant for more than a year. She testified he was a careful driver, and usually drove around 45 miles an hour. Occasionally he would drive in the center of the highway when there were no other cars around. When the Plymouth entered [474] the curve, plaintiff placed its speed "about 50 or 55 miles an hour" and thought it was just on the center line. Plaintiff did not look at the speedometer while in the curve. It seemed to plaintiff that the Plymouth continued to go more to the left ("weaved") as it progressed around the curve, took the curve "pretty wide" and, guessing its width at six feet, she thought it was about two or three feet across the center line when half-way through the curve, but always less than three-fourths of its width across the line. Plaintiff first saw the Ford, approaching at about 30 to 35 miles an hour on its side of the slab, close to the crest of the hill "about 450 feet, somewhere around there" away, when the Plymouth was about half-way through the curve and "partly" to the left of the center line. Plaintiff said the horn of the Ford was sounded when the cars were maybe 200, and also 250 or 300 feet apart; but she heard no signal by defendant. She hollered "Look out" when the cars were about 100 feet apart. Then, "shortly, about that time" defendant pulled to the right and the Ford pulled to the north too and the impact occurred. Plaintiff estimated that the Plymouth traveled 300 to 350 feet after she saw the Ford and the Ford

traveled about 100 feet to the point of impact. She could not tell that either car slowed up, noticed no application of the brakes by defendant, and to her it "looked like," "I don't know," the Plymouth was a little over the center line at the instant of impact.

Defendant testified he had been driving around 45 miles an hour and 35 miles an hour after he entered the curve with his car on his side of the slab, the right wheels within one-and-a-half to two feet of the north edge of the concrete. When he first saw the Ford, it was just coming over the crest of the hill diagonally across the highway, about 100 feet away. He immediately "jerked" to the right; and his car traveled four or five feet to the right and around 20 feet or better altogether, having the right front wheel at least a foot off the pavement at the instant of impact.

Other witnesses put the speed of the Plymouth about 50 and the speed of the Ford about 30 to 35 miles an hour, with the Ford slowing down to five miles before the collision. The operator of the Ford turned left (north), he said, to avoid the Plymouth and because he thought the north shoulder was the wider. One witness said both cars turned north when about 50 feet apart. Several placed the collision as occurring in the north (the Plymouth's) lane of the slab, but not as far to the north as defendant.

Usually a party is entitled to the benefit of his adversary's evidence. However, the testimony of a party to the cause may be of such a nature as to have the effect of a judicial admission, in which event he may not avail himself of testimony which contradicts his own, or is inconsistent with his theory of the case. Trower v. Missouri-K.-T. Rd. Co., 347 Mo. 900, 908[1, 3], 149 S. W. 2d 792, 795[1, 4]; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 957, 958, 74 S. W. 2d 600, 603[7, 8]; Mollman v. St. Louis Pub. Serv. Co. (Mo. App.), 192 S. W. 2d 618, 621[3, 4]. Earlier cases are mentioned in the cases cited. Defendant would apply this rule to the speed, time, and distances mentioned in plaintiff's testimony. In Elkin v. St. Louis Pub. Serv. Co., supra, plaintiff failed to adduce evidence on a fact issue vital to his case and sought to appropriate certain testimony which contradicted his own testimony and was at war with his theory of the case to overcome the hiatus in his proof. He was not permitted to do this. That situation does not exist here. Throughout plaintiff qualified her statements regarding speed, distance, and the like with such expressions as "about," that is "my estimate"; "I didn't measure it" et cetera. An exception excludes the strict application of the rule to a plaintiff's estimates of speed, time, and distances. State ex rel. Thompson v. Shain, 351 Mo. 530, 534[1], 173 S. W. 2d 406, 407[2], sustaining (Mo. App.), 166 S. W. 2d 795, 799[2]; Tunget v. Cook (Mo. App.), 94 S. W. 2d 921, 925[2, 3], certiorari quashed, 340 Mo. 434, 101 S. W. 2d 1;

Ross v. Wilson, 236 Mo. App. 1178, 1185, 163 S. W. 2d 342, 346[1];
Pabst v. Armbruster (Mo. App.), 91 S. W. 2d 652, 657[2].

The negligence of the defendant in the operation of his automobile was not imputed to the plaintiff (Darrington v. Campbell, 150 Kan. 407, 94 P. 2d 305, 306) [475] and the burden of proving plaintiff's contributory negligence was on defendant (Crowe v. Moore, supra). Her evidence on the issue is to receive a reasonable interpretation. She had ridden with defendant for over a year and recognized him as a careful, although at times, a fast driver. She was a pay-passenger and entitled to repose some confidence in defendant's exercise of due care in the operation of his automobile. She had a right in the first instance to assume that defendant saw the Ford when it came over the crest of the hill and that he heard its horn until such time as it should become apparent to one in the exercise of ordinary care that he was inattentive. The collision took place on the north side of the slab. Whether defendant acted immediately or not upon plaintiff's warning, the south half of the highway had been cleared for the passage of the Ford. If defendant delayed turning to the north until he was within about 20 feet of the point of impact, as he testified, he did not act immediately upon the warning given by plaintiff. If plaintiff were short in her estimate on the space between the two cars when she cried out her warning, defendant had just that much more time and space available to return to his side of the road and there was that much less time and space between the warning given by the horn of the Ford, which plaintiff could take into consideration, and the warning given by plaintiff. In these circumstances the issue of plaintiff's contributory negligence was for the triers of the facts. The facts distinguish the instant case from Curtiss v. Fahle, supra, where the warning by the occupant of the car was given too late to prevent the injury, and Naglo v. Jones, 115 Kan. 140, 222 P. 116, and other cases wherein no warning was attempted.

The order granting a new trial is affirmed, and the cause is remanded for proceedings in conformity thereto. *Westhues* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.