George W. SMITH, Appellant,

v.

Robert A. SIERCKS, Respondent.

No. 44475.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Don G. Stubbs, James L. Williams, Stubbs, McKenzie, Williams, Merrick & Gibson, Kansas City, Vance Julian, Clinton, for appellant.

Kelso Journey, Clinton, for respondent.

HOLLINGSWORTH, Judge.

On the 29th day of August, 1953, plaintiff, George W. Smith, while operating his automobile northward on State Highway 13 near Clinton, Missouri, overtook and passed a northbound automobile operated by defendant, Robert A. Siercks, and thereupon collided with a southbound automobile operated by one Mary Lou Murphy, whereby plaintiff sustained personal injuries and damage to his automobile. By this action, he sought to recover damages in the sum of $25,400 from both defendant Siercks and Mary Lou Murphy. The petition alleged that as he undertook to drive around and pass the Siercks automobile, Siercks negligently and deliberately increased the speed of his automobile and swerved it to the left, thereby denying plaintiff the right of way and delaying plaintiff's passage and prompt return to the right side of the highway; that Mary Lou Murphy, at the same time, saw plaintiff in a position of imminent peril of collision with her oncoming automobile and negligently failed to slow her speed or swerve to her right and avoid a collision of plaintiff's automobile with hers; and that the negligence of each of the defendants was a proximate cause of the collision.

Defendant Siercks is a minor. Prior to the trial, his mother, Carmyle Siercks, was duly appointed his guardian ad litem and thereafter, as such, answered and defended the suit. Plaintiff effected a settlement for the sum of $2,000 with Mary Lou Murphy and dismissed the action as to her when the case was called for trial. At the close of all the evidence, the trial court directed a verdict in favor of instant defendant and upon return thereof accordingly entered judgment, from which plaintiff appealed.

The theory of the trial court in directing a verdict for defendant, as he declared in an oral statement to the jury, was that " * * * the plaintiff himself, his own testimony has shown to the mind of the court * * * that there was no negligence on the part of the defendant Siercks which caused the plaintiff Smith to collide with the Murphy car. In other words, he testified that he had successfully passed the Siercks car. Regardless of the fact whether or not the Siercks car had speeded up, it makes no difference, he had already gotten past it according to his own testimony, had gotten into his own lane of traffic and was struck by the Murphy car, which may have made, if Miss Murphy had been left in the case, * * * a submissible case against her of being negligent for having run into him."

The collision occurred south of the city limits of Clinton. At that point Highway 13 extends north and south and is downgrade to the south. It is paved with "blacktop" macadam, 20 feet, 9 inches, in width. The collision occurred at 11:15 p.m. The weather was warm and clear, the pavement dry.

Wayne Allman, State Highway Patrolman for the past seven and one-half years, testified in behalf of plaintiff: He is stationed at Clinton and arrived at the scene of the collision at 11:35 p.m. He came upon plaintiff's car first. It was in the ditch on the east side of the highway. South thereof he came upon the Murphy and Siercks cars. They were locked together, head-on, in the east traffic lane. There had been two collisions. First, the

Murphy car, headed south, and the plaintiff's car, headed north, had sideswiped each other; and, second, the Murphy car had continued on southward for a distance of 159 feet from the point of its collision with plaintiff's car and there had collided head-on with defendant's car. There was glass and debris at the points of both collisions. There was a freshly "dug-out" spot, a "gouged-out" spot, in the blacktop portion of the highway, evidencing, the witness said, the point of collision of plaintiff's car and the Murphy car. The dug-out spot was 4 to 6 inches to the west of the center line of the pavement. There was debris at the dug-out spot "in the vicinity of the center" of the highway, but "more in the west lane". At the point of the collision between the Murphy and defendant Siercks cars, the witness found a skid mark leading from the right rear wheel of defendant's car back southwestwardly a distance of 15 feet to the exact center line of the highway at an angle of 45 degrees, showing, the witness said, that the defendant's car was on the "wrong" (west) side of the highway "before [defendant] started braking down". It was the type of a mark that "would have been laid down by the motorist applying his brakes and sliding his wheels to come to a stop". Plaintiff had been taken to the hospital before the patrolman arrived. The patrolman talked with defendant at the scene of the collision. Defendant there made a statement to him that "he (Smith) had just passed me (defendant) and was in the middle of the road when he hit the other (Murphy) car."

Plaintiff testified: On the night of the collision he drove from Deepwater toward Clinton at a speed of 40 to 50 miles per hour. He heard the patrolman (Allman) testify and his testimony "placed the accident about where it occurred". As he came up to the defendant's car, it was not going fast, 30 to 35 miles an hour, and was upon its right side of the highway. Plaintiff attempted to pass defendant's car. When he was even with defendant's car or a half car length in front of it, defendant "speeded up on me", "equal to my speed (of 40 to 50 miles per hour) or faster". Both cars stayed relatively abreast for a matter of seconds. There was no car in sight when plaintiff attempted to pass defendant, but plaintiff got a glimpse of car lights in the air "coming out of the city limits". These lights (from the Murphy car) were a quarter of a mile away when he first saw them. Plaintiff then "lagged back to get behind the (defendant's) car", and guessed that defendant saw the reflection of lights about the time he did, as he (defendant) lagged back too. Plaintiff speeded up and went around defendant and came into collision with the Murphy car, which, as it approached the point of collision, was weaving back and forth across the center line of the highway. Plaintiff sustained severe injuries, was in great pain, and was immediately taken to a hospital by a motorist that had been following his car. He did not see the gouged-out spot on the pavement that night and did not return to the scene of the collision until 14 weeks thereafter.

Plaintiff further testified:

"Q. Where did that collision occur with reference to the center of the highway? A. Well, according to the Highway Patrol and everything it was right in, right close to the center of the highway.

"Q. You are telling the jury that you had succeeded in getting all the way back to your side of the road, or partly back? A. Yes.

"Q. Well, what's your best judgment of it? Just tell them what your best judgment is. A. Well, the best I could tell, at night, I was to my side of the road.

"Q. It was at night? A. Night.

"Q. Do you remember if there was a white line there indicating the center of the road at that time, George? A. At that time I believe it was just checks down the highway; it wasn't marked like it is now, I know."

On cross-examination, plaintiff was interrogated vigorously and at great length as to the position of his car upon the high-

way when it came into collision with the Murphy car. Space will not permit a detailed statement of his answers to these many questions. Several times he answered unqualifiedly that he had completely passed defendant's car and had returned to his side of the highway before the collision. Again he would state that to the best of his judgment he had returned to his side. He admitted that during testimony then recently given by him in the case of Murphy v. Siercks, arising out of the instant collisions, he had several times stated he had returned to his side before the collision occurred. On redirect examination, he undertook to explain these conflicting answers by stating, in effect, that due to the darkness of the night and his preoccupation with the act of passing defendant's car, he was not certain of his position; that he had believed he had fully returned to his side of the highway before the collision until Mr. Allman, the highway patrolman, exhibited certain pictures to him which showed the gouged-out spot on the highway to be west of the center line; and that these pictures had convinced him he had been mistaken in his conclusion that he had gotten back to his side before the collision occurred.

Mary Lou Murphy testified: She drove south out of Clinton at 25 to 30 miles per hour and first saw plaintiff's car when it began to pass defendant's car. At that time both cars "seemed to speed up and slow down and speed up and slow down". She slowed her car to a speed of 20 to 30 miles per hour. Plaintiff's car came ahead with a burst of speed and sideswiped her car. Her car was at that time on the west side of the highway. On cross-examination, she said plaintiff's car was "on the wrong (west) side of the highway" when it collided with her car.

Defendant's version of the collision between plaintiff's car and the Murphy car was that he was driving northward to the scene of the collisions at 35 to 40 miles per hour in the right lane of traffic, from which lane he did not at any time depart; that he saw the headlights of plaintiff's car as it approached from his rear; that plaintiff, travelling at 50 to 55 miles per hour pulled out in the left lane and passed his car, and "something seemed to force him out, or he just didn't get back in the center of his lane, he just straddled the center line of the highway and sideswiped Murphy"; that he saw the lights of the oncoming Murphy car as it came "around the curve"; that it was also close to the center of the highway and did not swerve out to avoid the collision; and that he never saw it swerving from one side of the highway to the other.

It was on the basis of plaintiff's testimony as to the position of his automobile on the highway at the time of the collision that the trial court found he had admitted himself out of court. Plaintiff insists that the circumstances under which the collision occurred, in and of themselves, show that the testimony of plaintiff as to the position of his car upon the highway at the time of the collision could be nothing more than a mere estimate and is not binding upon him as a matter of law; and, further, that, in any event, the point of the collision upon the highway is unimportant. Plaintiff's argument runs in this wise: "Again taking the evidence most favorable to the plaintiff, it will be recalled that Siercks was not only racing plaintiff but apparently was crowding him. Accordingly to the highway patrolman, Siercks was over in the west lane when he applied his brakes to head for the ditch. If Siercks was in the west lane, appellant who was attempting to pass him on the left had to be on the shoulder, or almost there. Thus the two cars would have completely blocked the paved portion of the highway and would have explained Miss Murphy's actions, as testified to by the plaintiff: 'The Murphy car was weaving back and forth across the highway.' Faced with this emergency situation, Miss Murphy had little choice as to which way to turn. As it happened the impact occurred practically in the middle of the highway. * * * But for the negligent actions of Siercks appellant would have had ample opportunity to pass him and to get back to appellant's side of the road. The causal link between Siercks' negligence and the appellant's injuries is apparent. There was

nothing Miss Murphy could do when presented with a blocked highway and two oncoming cars." Defendant says that the several unequivocal declarations of plaintiff that he had returned to his side of the road before the collision "completely exonerated defendant of any imputation of negligence, and cast the sole responsibility of the accident upon the driver of the Murphy automobile, and * * * had the force and effect of a judicial admission so as to preclude a recovery against defendant * * * as a matter of law."

■■■ The courts of this State frequently have been called upon to consider the effect of testimony of a party such as was given by plaintiff in this case and to determine whether it amounts to a judicial admission binding upon the party, thereby depriving him of the benefit of the favorable testimony of his other witnesses. The law has been tersely stated by Bour, C., in the case of Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747, 748 [1–4]: "But a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony or by other witnesses. Wigmore, Evidence, Sec. 2495a (3d Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, whether given by himself, Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S.W. 177, by his adversary's witnesses, Elkin v. St. Louis Public Service Co., 335 Mo. 951, 958, 74 S.W.2d 600, or by his own witnesses. Mollman v. St. Louis Public Service Co.,

Mo.App., 192 S.W.2d 618, 621, and cases cited. Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a mere estimate or opinion, it does not have the effect of a judicial admission. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is subject to inexactness of observation and memory. See Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619, a leading case. Thus a party is not conclusively bound by his mere estimate of time, speed or distance, or the position of an automobile or train at the time of an accident. His testimony in regard to such matters does not preclude him from relying upon the more favorable testimony of other witnesses in the case, unless the testimony of the other witnesses is inconsistent with his theory of the case or contrary to physical facts. Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470, 471; State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406; Goggin v. Schoening, Mo. App., 199 S.W.2d 87, 92; Golden v. Onerem, Mo.App., 123 S.W.2d 617, 169 A.L.R. 798, 819."

■■■ In the instant case there was strong and convincing testimony that the collision occurred upon or west of the center line of the highway. The measurements and observations made by the highway patrolman support this view. Miss Murphy so testified and defendant expressly admitted that plaintiff "didn't get back to the center of his lane, he just straddled the center line of the highway and sideswiped Murphy". Now, it is true that plaintiff stated in positive terms several times that he had returned to and was in his own proper lane when the collision occurred, but we think it is also evident that despite his positiveness and the factual phraseology of such statements, yet he was, of necessity, stating an impression or conclusion, which in view of the circumstances under which it was formed, was subject to a wide margin of error, and that the jury reasonably could so find. He was faced with immediate peril of a head-on collision in the night time on a blacktop highway; he was speeding up

in an effort to avoid the peril; obviously, his immediate attention would be directed to the object imperiling him, the Murphy car. Immediately following the collision, he was taken away from the scene. Considering all of the facts and circumstances in evidence, we have concluded that plaintiff's testimony did not amount to a judicial admission as to the position of his car upon the highway when it collided with the Murphy car; and that the jury could consider his explanation of the inconsistencies in his testimony in weighing its value and in connection with all of the evidence in determining the facts and defendant's negligence and its causal connection, if any, with the collision and plaintiff's resultant injuries.

■ A collision such as is here shown could be caused by the negligence of either one of the three motorists involved therein or by the concurring negligence of any two or all of them. We think it cannot be gainsaid that, considered in the light most favorable to plaintiff, the evidence sufficiently tended to show negligence on the part of defendant in speeding up his automobile when he saw plaintiff in the act of passing him. And especially is this true when he admitted he saw at about the same time as did plaintiff the lights of the oncoming car. Under such circumstances, the jury could reasonably find that, in the exercise of the highest degree of care, defendant knew or should have known that by interfering with plaintiff's passage and thereby increasing the distance required of plaintiff to pass around him he was placing plaintiff's car in the immediate path of the Murphy car and peril of collision with it.

We do not understand defendant to contend otherwise. What we do understand from defendant's brief and argument is that plaintiff reached a place of safety and there was no causal connection between defendant's aforesaid negligence and the collision of plaintiff's car with the Murphy car. In view of our holding that plaintiff was not bound by his testimony as to the position of his car at the time of the collision and that the jury could consider the favorable testimony of his other witnesses, we think that contention goes out of the case. This, for the reason that the jury could reasonably find from the testimony of those witnesses that defendant's negligent act of delaying plaintiff's passage around him had made it impossible for plaintiff to return to the right side of the highway to a position of safety and avoid the collision.

■ But, moreover, and more to the point: If the effect of defendant's negligence actively and continuously operated to bring about the collision by preventing plaintiff from returning to the right side of the highway, then the mere fact that Miss Murphy simultaneously operated her car in such a manner as to also become a substantial factor in causing the collision does not relieve defendant of liability, irrespective of her negligence. Restatement, Torts, Vol. 2, § 439, p. 1184; Gray v. Kurn, 345 Mo. 1027, 137 S.W.2d 558, 566 [9]; Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, 828 [3–5]. And, further, even if plaintiff's car, after passing defendant's car, had reached the right side of the highway and was in a position of safety but for negligence of Mrs. Murphy in swerving or "weaving" her car to the left, yet that fact would not make her act a superseding cause if the jury should further find that defendant reasonably should have foreseen that his negligence might cause Miss Murphy to swerve to her left. Restatement, Torts, Vol. 2, § 447(a) and (b), p. 1196; Champieux v. Miller, Mo., 255 S.W.2d 794, 797 [3].

■ We are of the opinion the jury could reasonably find that the effect of defendant's negligence, if he was negligent, was still actively and continuously in operation at the time of the collision so as to constitute a direct and causal connection between his negligence and the collision, regardless of the position of plaintiff's car upon the highway.

The judgment is reversed and the cause remanded.

All concur.