**Clarence P. STOUT, Plaintiff-Appellant,**

v.

**ST. LOUIS COUNTY TRANSIT COMPANY,
Defendant-Respondent.**

No. 29161.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1955.

Richard M. Marshall, Strubinger, Tudor, Tombrink & Wion, St. Louis, for appellant.

Evans & Dixon, William W. Evans, St. Louis, for respondent.

SAM C. BLAIR, Special Judge.

An intersectional collision between a Buick automobile operated by plaintiff and a small Ford school bus operated by defendant's driver resulted in personal injuries to plaintiff and damage to his Buick for which he was awarded a judgment for $1,200. The trial court set aside the verdict and judgment and entered judgment for the defendant. The plaintiff appeals.

The collision occurred in daylight in St. Louis County within the intersection of Edgar Road and Highway 66, City Route. Highway 66 and Edgar Road were dry. Edgar Road runs generally north and south. Highway 66 runs generally east and west. They intersect at virtual right angles. Highway 66 is an asphalt-surfaced, multiple-lane highway. It is 40 feet wide. Two traffic lanes lie on each side of its center. These lanes are uniform in width, 10 feet. Just prior to the collision plaintiff was traveling west toward the intersection. He was in the northernmost or outside westbound lane of Highway 66. The bus was traveling east toward the intersection in the eastbound lane adjacent to the center line of the highway. The collision occurred when the bus driver turned left across the center line and tried to go at an angle or in an arc across the westbound lanes and north on Edgar Road. At the instant of collision, the right side of the Buick was 6–12 inches south of the north shoulder of the highway and its left side was slightly north of the middle of its own northernmost westbound lane. The point of collision was 15 feet and a few inches directly north of the center line of Highway 66 and 1–2 feet east of the center line of Edgar Road. The left front of the Buick collided with the front end of the bus about 6 inches to the right of its center.

The only eye witnesses who testified were plaintiff and the bus driver. Plaintiff called the bus driver as his own witness. The bus driver's version was: He was traveling east. Before turning left across the center

line, he shifted into second gear and "dropped" his speed to "between 5 and 10" miles per hour. That was his speed as he crossed the center line. At once he accelerated to a speed that "could have been" more than 10 m.p.h., maybe "between 10 and 15" m.p.h. After he crossed the center line, he heard plaintiff sound his horn. Although he *said* he *looked* to the east before turning, he *did not testify he saw plaintiff approaching*. The inference from his whole testimony is strong that he had not previously seen plaintiff approaching. For the sound of the horn was his first notice of "the danger of an accident." On the instant, he looked east and saw plaintiff at a distance of 250–300 feet from him. Plaintiff was coming at a speed of 55–60 m.p.h. The bus driver was "confused." "I put my brake on." He "imagined" his own speed was then 10–15 m.p.h. "I stopped right there," "right now," "I set it down," "I don't think I moved over two or three feet." The collision followed. Concerning his reaction time he testified: "Q. To stop that bus did you have to take your foot off the accelerator and put it on the brake? A. That is right. Q. *Does that take any length of time to do that? A. Not going that slow.* * * * Q. I say how long did it take you to take your foot off of the accelerator and put it on the brake? A. *Just about two or three seconds.*" At the point of collision, the bus stood at an angle across the westbound lanes, "around forty-five degrees or ninety," toward the northeast or the north. It was 12–15 feet long and it completely "blocked" all of that part of the westbound lanes lying south of the point of collision. As recited, the point of collision was 15 feet plus directly north of the center line.

For plaintiff, a professional engineer, specializing in traffic safety, testified to relevant stopping distances under existing conditions at the time and place of the collision. Traveling 10–15 m.p.h., the bus, he said, could have been stopped with safety in a total distance of 36½ feet, assuming a reaction distance of about 16½ feet and thereafter a braking distance of 20 feet. Traveling at 5–10 m.p.h., the bus could have

been stopped, with safety, he said, in a total distance of 20.25 feet, assuming a reaction distance of 11.25 feet and thereafter a braking distance of 9 feet. Contradicting defendant's driver, he fixed the reaction time at ¾ths second, instead of "about two or three seconds" as defendant's driver fixed it. In each instance, moreover, he obviously employed the maximum speed in computing the reaction distance at speeds of 5–10 and 10–15 m.p.h., and not any of the intervening or minimum speeds. This must be remembered in understanding all later computations.

Plaintiff's version was: He was traveling west. He was "positive" his speed was "not over 50 m.p.h." About 300–400 feet from the point of impact he observed the bus approaching the intersection of Highway 66 and Edgar Road in the eastbound lane adjacent to the center line. He thought it was ultimately going to turn left across the center line and the two westbound lanes and north into Edgar Road. He assumed it would not undertake to do so until it permitted him to pass through the intersection. Suddenly, nevertheless, it turned left over the center line, obviously intending to cross the westbound lanes and to go north into Edgar Road, and it traveled on in that direction. Following considerable vacillation, he finally fixed his own distance from the point of impact at about 160–170 feet at the instant the bus turned left across the center line. The speed of the bus was 20–30 m.p.h. It was not slackened, he said, at any time. He applied his brakes as quickly as possible, in "about a second." From the point they were applied, the Buick skidded about 80–82 feet into collision with the bus. From the point the bus crossed the center line, it had proceeded at an angle or diagonally to the north for a distance of 30–40 feet to the point of collision.

Submitted to the jury, plaintiff's case was grounded on the theory that he was in imminent peril and that the bus driver failed to exercise the highest degree of care to discover his peril and thereafter to take timely and available measures to stop the bus, or to slacken its speed, or to turn it aside, and thereby caused the collision.

4

Questioned by this appeal is the sufficiency of the evidence to warrant the verdict and judgment which the trial court set aside.

 Asserting that plaintiff is not entitled to the benefit of any evidence which contradicts his own personal testimony and is at war with his own fundamental theory of the case, defendant argues we cannot consider the bus driver's testimony that he was traveling between 5–10 m.p.h. as he crossed the center line in second gear. According to defendant, plaintiff is conclusively bound by his own testimony that the bus driver was traveling 20–30 m.p.h. at all times.

We notice in the outset that plaintiff is not seeking the benefit of any of defendant's evidence. Actually, the defendant presented no evidence at all relating to the collision or its cause. What plaintiff is seeking, as he argues his case, is to utilize the testimony of the bus driver who was his own witness. Argument that he cannot do this is fully answered, we think, by Davis v. Kansas City Public Service Co., Mo.Sup., 233 S.W.2d 669, 674, and the authorities, infra. For plaintiff's testimony concerning the speed of the bus was an estimate merely, and he so testified. Giving character to this estimate he said, moreover: "It is hard to estimate a car you are meeting, how fast it is traveling, to be exact." It is elementary that a party is not bound conclusively by his own estimate of time, speed or distance, if his estimate is an estimate only. Such an estimate by a party does not carry the binding characteristics of a judicial admission. Quite the reverse, he may ask the jury to ignore his own estimate and to adopt and act on the more favorable estimates of his own witnesses, or those of the witnesses of his adversary, or even those of his adversary himself, unless these estimates contradict his own testimony *and* are essentially at war with his own fundamental theory of the case. State ex rel. Thompson v. Shain, 351 Mo. 530, 535–538, 173 S.W.2d 406, 407–409; Burris v. Kansas City Public Service Co., Mo.App., 226 S. W.2d 743, 747(1–4); Smith v. Siercks, Mo.

Sup., 277 S.W.2d 521, 525(1–3); Dennis v. Wood, 357 Mo. 886, 891–893, 211 S.W.2d 470, 474; Pabst v. Armbruster, Mo.App., 91 S.W.2d 652, 657(2, 3); Spoeneman v. Uhri, 332 Mo. 821, 829, 60 S.W.2d 9, 12–13. With even greater logic this rule embraces instances where a party's estimate was formed, as here, under the stress of impending danger and others who testify were more favorably situated to form a more accurate estimate. In the present circumstances, the bus driver was better situated, we believe, to estimate his own speed than was the plaintiff faced by the likelihood of disaster and by an urgency for taking measures to prevent it. Pabst v. Armbruster, supra, 91 S.W.2d 657(2, 3).

That the bus driver's testimony, although contradictory of plaintiff's, was not at war in the legal sense with plaintiff's own fundamental theory of the case is attested by Dennis v. Wood, supra, 211 S.W.2d 473–474; State ex rel. Thompson v. Shain, supra, 173 S.W.2d 407–409; Pabst v. Armbruster, supra, 91 S.W.2d 657; Spoeneman v. Uhri, supra, 60 S.W.2d 12–13; Tunget v. Cook, Mo.App., 94 S.W.2d 921, 924–926; Ross v. Wilson, 236 Mo.App. 1178, 1185, 163 S.W. 2d 342, 345–346, and Smith v. Siercks, supra, 277 S.W.2d 525. Defendant's reliance for support of its argument is on Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600; Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869, and Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782. All are distinguishable at once when compared with the authorities we have cited, especially State ex rel. Thompson v. Shain, supra, 173 S.W.2d 407, and Dennis v. Wood, supra, 211 S.W.2d 473–474.

 Determining whether plaintiff made a case for the jury we must grant him, therefore, the benefit of all evidence favorable to him and every favorable and reasonable inference warranted by the entirety of the evidence, and this must include the testimony of the bus driver. Authorities, supra; Savage v. Michalon's Estate, Mo.App., 176 S.W.2d 626; Keyton v. Missouri-Kansas-Texas R. R., Mo.App., 224 S.W.2d 616.

Substantial evidence already recited authorized the jury, according to this criterion, to find, if it thought it ought to do so, that plaintiff was in a position of imminent peril which was discoverable by the bus driver, and that timely measures were thereafter available to him to stop the bus or to slacken its speed or to turn it aside and thereby avoid the collision. Advocated by defendant as requiring a contrary ruling are Paydon v. Globus, Mo.Sup., 262 S.W.2d 601; East v. McMenamy, Mo.Sup., 266 S.W.2d 728, and Breshears v. Myers, Mo.Sup., 266 S.W.2d 638. These adjudications do not reach, much less determine, the question posed by this controversy. For all are grounded, analysis discloses, on situations of fact entirely variant from the one this record presents.

The parties do not question the visibility at the time. Neither asserts that his vision was obstructed by any object. Adequate circumstantial evidence warrants the conclusion it was not. Added to this, defendant altogether ignores this theory as a defense and its sole argument here is that there is no substantial evidence that the bus could have been stopped or that its speed could have been slackened or that it could have been turned aside so as to avoid the collision.

Under the facts we view, we cannot, as a matter of law, hold that the obligations of the humanitarian doctrine arose only *when* the bus actually entered the *very path* of plaintiff's vehicle. On this record, the jury could, we think, find that plaintiff was in imminent peril at the instant the bus was being turned to the left across the center line, if the bus and plaintiff's vehicle were to continue their respective courses to the point where inevitably they would collide. McCombs v. Ellsberry, 337 Mo. 491, 497–499, 85 S.W.2d 135, 137–138; Smith v. Fine, 351 Mo. 1179, 1189–1192, 175 S.W.2d 761, 763–764; McCarthy v Sheridan, 336 Mo. 1201, 1205, 83 S.W.2d 907, 909; Spoeneman v. Uhri, supra, 60 S.W.2d 12. At that instant, plaintiff was 160–170 feet from the point of collision, he was traveling 50 m.p.h., and he was unable to stop short of the path the bus driver was intending to pursue across his own. At that instant the bus was between 30–40 feet from the point of collision. At that instant it was the bus driver's duty (aware of his own intention to turn left across the westbound lanes) to exercise the highest degree of care, if plaintiff was then in imminent peril, to discover plaintiff's approach, to observe his speed, his position and course, to note his own speed, his position and course, to assess his own ability to check or stop the bus or turn it aside, to assess the imminence of collision if both he and the plaintiff continued their respective courses, and to take such timely measures as then were available to him to avoid the collision. Allen v. Kessler, Mo.Sup., 64 S.W.2d 630, 632–633; Phillips v. Henson, 326 Mo. 282, 289, 30 S.W.2d 1065, 1067–1068. Had the bus driver discovered plaintiff's peril, and had he recognized that it was imminent, as he turned left across the center line, and had he then taken timely and available measures to avoid the collision, substantial evidence warranted the jury in finding that he could have stopped the bus short of the point of collision.[1]

Since substantial evidence authorized the jury to determine that the bus could have been stopped, it had *a fortiori* the right to

1. The point of impact was 15′ plus directly north of the center line of Highway 66. But the bus did not turn at an abrupt or right angle or go directly north across that mere distance to the point of impact. On the contrary, it moved, in turning left, at an angle or in an arc for a distance between 30′ and 40′ in going to the point 15′ plus north of the center line. At the point of impact, its direction was between 45°–90° northeast or north of center line. Moving 10 m. p. h., plaintiff's traffic specialist said it could be stopped in 20.25′, i. e., 11.25′ reaction distance and 9′ braking distance. Employing as reasonable the specialist's reaction time of 3/4ths second, Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, and adopting his 9′ estimate of safe braking distance, the bus could be stopped in 17.5′ moving 7½ m. p. h., i. e., 8.5′ reaction distance and 9′ braking distance, and moving 5 m. p. h., it could be stopped in 14.62′, i. e., 5.62′ reaction distance and 9′ braking distance. The 9′ safe braking estimate is purposely used in *all* calcula-

**6**

conclude that its speed could have been slackened enough to avoid the collision. Harrell v. Berberich, 359 Mo. 551, 555, 222 S.W.2d 733, 734 [1, 2]; Steger v. Meehan, Mo.Sup., 63 S.W.2d 109, 110 [2, 3]; Spooneman v. Uhri, supra, 60 S.W.2d 12 [9].

Substantial evidence warranted the jury in finding also, if it thought it ought to do so, that the bus could have been turned enough aside to avoid the collision. Traveling between 30–40 feet from the point it turned left across the center line until it reached the point of collision, at a rate between 10 and 15 m.p.h., and in second gear, it was actually turned left and across the center line from its eastern direction to a point 15 feet plus directly north of the center line. The jury certainly could conclude that the maneuverability of the bus which enabled its driver to turn it that sharply in that distance could have been employed by him to turn it enough away from plaintiff's path to prevent the collision. Brown v. Callicotte, Mo.Sup., 73 S.W. 2d 190, 193; Steger v. Meehan, supra, 63 S.W.2d 109, 110; Goggin v. Schoening, Mo.App., 199 S.W.2d 87, 93(6, 7).

Questions of negligence are for the jury in all instances, unless, on the entirety of the evidence, reasonable minds could not entertain differences of opinion regarding the question whether the care that was due was exercised. Anderson v. Missouri Granite & Construction Co., Mo.Sup., 178 S.W. 737; Parker v. Nelson Grain & Milling Co., 330 Mo. 95, 48 S.W.2d 906; Miller v. Dunham, Mo.App., 186 S.W. 29. Our study of this record convinces us, and we hold, that it presents a substantial basis for differences of opinion between reasonable minds arguing the question whether the bus driver, exercising the highest degree of care, could have discovered the imminence of plaintiff's peril, and whether time was available to him after that discovery to stop the bus or to slacken its speed or to turn it aside and thereby prevent the collision. So holding, we must rule that the verdict and judgment for plaintiff rested on substantial evidence and should not have been set aside.

For these reasons, the order of the trial court must be reversed and we must order reinstatement of the verdict and judgment for plaintiff.

It is so ordered.

ANDERSON, P. J., and FRANKLIN FERRISS, Special Judge, concur.

tions for it is the *only* one in evidence. Moving 30′ from the point where it crossed the center line to the point of impact, at 10 m. p. h., it could be stopped 9.75′ short of the point of impact—7½ m. p. h., 12.5′ short—5 m. p. h., 15.25′ short. Moving 35′ at 10 m. p. h., it could be stopped 14.75′ short of the point of impact—7½ m. p. h., 17.5′ short—5 m. p. h., 20.25′ short. Moving 40′ at 10 m. p. h., it could be stopped 19.75′ short of the point of impact—7½ m. p. h., 22.5′ short—5 m. p. h., 25.25′ short. We advisedly refrain from basing calculations on the bus driver's testimony that he stopped the bus in 2 or 3′ and from deciding whether in that distance he could do so safely.