Agnes DAVIDSON, Plaintiff-Appellant,

v.

M. E. KING, Defendant-Respondent.

No. 7533.

Springfield Court of Appeals.

Missouri.

Jan. 7, 1958.

Motion for Rehearing or to Transfer Overruled Jan. 29, 1958.

Bloodworth & Bloodworth, Hyde & Purcell, Poplar Bluff, for plaintiff-appellant.

Blanton & Blanton, Sikeston, for defendant-respondent.

STONE, Presiding Judge.

In this intersectional collision case, plaintiff had a nine-man jury verdict for $2,700; but, upon defendant's after-trial motion, the court set aside the judgment for plaintiff and entered judgment for defendant. On this appeal by plaintiff, the sole issue is whether plaintiff made a prima facie case on the only negligence submitted to the jury, i. e., defendant's alleged negligence under the humanitarian doctrine in failing to stop and to swerve. This opinion is written after rehearing granted upon defendant's motion.

The accident occurred about 9:30 A.M. on May 29, 1954, a clear, dry day, at the intersection of Pine, an east-and-west street, and Ninth, a north-and-south street, in the City of Poplar Bluff, Missouri. Pine Street, a heavily-traveled thoroughfare over which U. S. Highway 60 is routed, is forty feet seven inches wide from curb to curb. Ninth Street is twenty-one feet one inch in width. Both streets are paved. Traffic at this intersection is regulated by an overhead automatic traffic control signal light. Plaintiff, forty-two years of age, accompanied by her husband and nineteen-year old son, was driving a 1941 Chevrolet sedan west on Pine. Defendant (whose age is not given), accompanied by his wife, fifty-nine years of age, was driving his 1950 GMC pickup south on Ninth. The point of collision was "right almost under" the traffic control signal light, "just about the center of the intersection."

The initial factual dispute was as to which driver had the green or "go" light. *Plaintiff's* version was that, after having stopped on the north side of Pine Street some one hundred fifty feet east of the intersection to permit her daughter and son-in-law to alight at a market, the traffic control signal light "changed from yellow to green just as I started up" and remained on green until the collision. Her husband said that the light changed to green for traffic on Pine when "the car was right near the intersection." Plaintiff and her husband reiterated no less than eight times that the signal light changed *from yellow to green,* although the chief of police (called as a witness for plaintiff) stated that the light cycle was *from red to green* to

yellow to red. *Defendant's* version was that the traffic control signal light at the Pine-Ninth intersection changed to green or "go" for traffic on Ninth Street when his pickup was "about twenty feet" north of the intersection. That, at the time of accident, the light was green for traffic on Ninth was confirmed by two apparently disinterested witnesses. But, however pronounced our view on this factual issue may be, we must, on this appeal, assume that the light was green or "go" for traffic on Pine, for, in determining whether plaintiff made a submissible case, we consider the evidence in the light most favorable to plaintiff and accord to her the benefit of all favorable inferences reasonably deducible therefrom. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633(3).

Sight distance to the right or north for west-bound travelers on Pine, such as plaintiff, and to the left or east for south-bound travelers on Ninth, such as defendant, was restricted and limited by a "bank" of higher ground contained within a wall around the yard on the northeast corner of the Pine-Ninth intersection, by "some little shrubs, bushes there" in the yard, and (at the time of accident) by "a car parked right on the north side of Pine Street, right at the corner." A photograph (plaintiff's exhibit 1), taken from a considerable distance (not fixed in the evidence) east of the intersection with the camera pointed toward the west, portrays the higher ground, bushes and shrubs but not the parked automobile. The photograph also shows an east-and-west parkway and sidewalk along the north side of Pine, but there was no evidence as to the width of the parkway or sidewalk nor as to the height or size of any visual obstruction on the northeast corner of the intersection.

When *plaintiff* was asked, "as you go west on Pine Street, *can you see* traffic coming south on Ninth," she replied "you can't until you get right up there in the intersection." And, in response to cross-examination as to where she was when she *did see* defendant's pickup, plaintiff first answered *"right almost* at the intersection," then readily agreed that she was *"right almost* to the curb," and when defendant's counsel sought more definite information with the question, "would you say five feet away," finally stated *"just about where that white sign is,"* pointing to a sign in the photograph. We think it fairly inferable that plaintiff referred to a "no parking" sign in the north parkway on Pine, that being the only "white sign" on Pine east of the Pine-Ninth intersection, which is shown in the photograph. And, although the oral testimony did not fix the distance between the east curbline of the intersection and the "white sign" and we decline to estimate that distance from the photograph alone [cf. McLean v. Erie R. Co., 69 N.J.L. 57, 54 A. 238, 239(2); Puleo v. Stanislaw Holding Corp., 126 Misc. 372, 213 N.Y.S. 601; Scott on Photographic Evidence, § 85, pp. 65–73], it is obvious that the sign is some distance east of the Pine-Ninth intersection and is *not* at the east curbline of the intersection. *Defendant* was not asked, and did not testify, as to the location of the vehicles with reference to the Pine-Ninth intersection either when he *could have seen* plaintiff's approaching west-bound automobile or when he *did see* it. However, an investigating police officer testified, in plaintiff's case in chief, that defendant said a few minutes after the accident that "I was coming south on Ninth Street on a green light and saw the other car coming and thought he was going to stop"; and, on cross-examination at the trial, defendant frankly admitted such statement to the investigating officer, readily agreed that (as is apparent from the photograph) "when you get right to the north curb (of the intersection), you can see then up Pine Street to the east"—"see traffic coming west," and significantly stated that "I did not look for traffic, I knowed I had the right of way."

Plaintiff, her husband and her son uniformly estimated the speed of *plaintiff's*

automobile when it entered the Pine-Ninth intersection at *"about"* or *"anywhere from"* fifteen to twenty miles per hour. When asked as to the speed of *defendant's* pickup, plaintiff said *"I figure* he was going *about* twenty-five or thirty"—*"that is just my guess,"* and plaintiff's son first hesitantly mused "well, *I don't know for sure"* and, when pressed for his "best judgment," answered "I *judge* twenty-five or thirty." *In plaintiff's case in chief,* she (a) produced the investigating police officer who testified that defendant had stated that he was "going about ten miles an hour," (b) subsequently put defendant on the stand to establish that he had been driving a 1950 GMC pickup with four-wheel mechanical brakes in good working order and that the pickup was "generally in good condition," and (c) then called a sergeant of the Missouri State Highway Patrol who stated without objection that defendant's "reaction time at ten miles an hour * * * would be around six or seven feet" and that his braking distance "would probably be from seven to nine feet." *In defendant's case,* both he and his wife testified that, as he approached and entered the Pine-Ninth intersection, his pickup was traveling eight to ten miles per hour.

■ On this appeal, defendant's primary argument in his brief runs along the line that plaintiff was bound by her testimony that defendant was traveling about *twenty-five to thirty miles per hour* and could not have the benefit of the evidence that defendant's speed was *eight to ten miles per hour,* and that, absent any evidence that, traveling at *twenty-five to thirty miles per hour,* defendant could have averted the collision by stopping or swerving after plaintiff's peril became discoverable, plaintiff did not make a submissible case under the humanitarian doctrine. Of course, an essential element of a cause of action under the humanitarian doctrine is that, after (either actual or, in a discoverable peril case, constructive) notice of plaintiff's position of imminent peril, defendant must have had the present ability with the means at

hand to have averted the impending harm without injury to himself or others [West v. St. Louis-San Francisco Railway Co., Mo., 295 S.W.2d 48, 52(5), and cases there cited; Branscum v. Glaser, Mo., 234 S.W. 2d 626, 628(5); Batson v. Ormsbee, Mo. App., 304 S.W.2d 680, 683(5)]; and, *if* plaintiff in the instant case were limited to her testimony as to defendant's speed, unquestionably there would have been a failure of proof as to this essential element.

■ It is true that, as defendant emphasizes, a plaintiff may not have the benefit of other evidence which contradicts his own testimony and is at war with his fundamental theory of the case. Fisher v. Gunn, Mo., 270 S.W.2d 869, 874(4); Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7, 10(2–4); Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 603–604(7, 8); Bean v. St. Louis Public Service Co., Mo. App., 233 S.W.2d 782, 786(6, 7). But, it is also settled that a plaintiff is not bound conclusively by his *estimates* of time, speed or distance [Davis v. Kansas City Public Service Co., Mo. (banc), 233 S.W.2d 669, 674(1); State ex rel. Thompson v. Shain, (banc) 351 Mo. 530, 173 S.W.2d 406, 407–409], particularly in a situation where, as here, the defendant may have been in better position to form a more accurate estimate of his own speed than was plaintiff suddenly confronted with impending disaster. Stout v. St. Louis County Transit Co., Mo. App., 285 S.W.2d 1, 4; Pabst v. Armbruster, Mo.App., 91 S.W.2d 652, 657. In the instant case, plaintiff's statements as to the speed of defendant's pickup obviously were not positive declarations of fact [Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618, 621(4)] but were so qualified and phrased that they clearly constituted *estimates* with none of the binding characteristics of judicial admissions. Dennis v. Wood, 357 Mo. 886, 892, 211 S.W.2d 470, 474; Smith v. Siercks, Mo., 277 S.W.2d 521, 525(3). Mindful also of the noteworthy and meaningful circumstance that defendant's statement in the nature of an admission against interest was made a part

of plaintiff's case in chief, we are convinced that, on the record before us, plaintiff was entitled to the benefit of defendant's estimate of the speed of his pickup, i. e., eight to ten miles per hour. Stout v. St. Louis County Transit Co., supra, 285 S.W.2d loc. cit. 4(1, 2); Tunget v. Cook, Mo.App., 94 S.W.2d 921, 922, 925(2, 3). See also Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 49–50. Observe that in Fisher v. Gunn, supra, 270 S.W.2d loc. cit. 874, the court thought it "significant that plaintiff did not call defendant as a witness to prove, as part of plaintiff's case, defendant's own estimate of his speed."

For the purposes of this opinion, we assume that defendant could not have seen plaintiff's west-bound automobile on Pine, until the front end of defendant's south-bound pickup reached the north curbline of the Pine-Ninth intersection, but admittedly defendant then and thereafter *could have seen* plaintiff's automobile. After plaintiff's automobile became discoverable by defendant, his south-bound pickup traversed one-half the width of Pine Street, or approximately twenty feet, before the impact occurred "right almost under" the traffic control signal light, "just about the center of the intersection." At a speed of ten miles per hour, defendant's pickup was moving about 14.66 feet per second; and, approximately 1.36 seconds elapsed while the pickup traveled from the north curbline of the intersection to the point of collision. The undisputed testimony was that, including reaction time, defendant could have stopped his pickup in "around fifteen feet." So, the jury reasonably might have found that, if defendant had acted when plaintiff's automobile became discoverable, defendant could have brought his pickup to a stop some five feet short of the point of accident.

When the front end of defendant's pickup crossed the north curbline of the Pine-Ninth intersection, about 1.36 seconds before the collision occurred, plaintiff's automobile traveling fifteen to twenty miles per hour, or 22 to 29.33 feet per second, would have been within 29.9 to 39.9 feet of the point of accident, and thus within 19.4 to 29.4 feet of the east curbline of the intersection—a position neither irreconcilable nor inconsistent with plaintiff's testimony that she was "just about where that white sign is" when she first saw defendant's pickup. Cf. Edwards v. Dixon, Mo. App., 298 S.W.2d 466, 469–470. We are not impressed with defendant's argument that plaintiff was not then in a position of imminent peril. For, if (as we here must accept) the traffic control signal light was green or "go" for plaintiff and red or "stop" for defendant as their respective vehicles approached and entered the Pine-Ninth intersection, the jury reasonably might have found that plaintiff had a right to assume that traffic approaching on Ninth Street would observe and obey the "stop" light and, on the other hand, that defendant should have discovered plaintiff's automobile as soon as that vehicle became discoverable (i. e., when the front of defendant's pickup reached the north curbline of the intersection) and then should have anticipated that plaintiff would proceed into the intersection in accordance with the green or "go" light for traffic on Pine. Harrell v. Berberich, 359 Mo. 551, 222 S.W.2d 733, 735(3–5); Carpentier v. Middlewest Freightways, Mo., 259 S.W.2d 816, 819. See also Foulks v. Lehman, Mo. App., 17 S.W.2d 994, 995–996(1, 2). Certainly, if he was running a "stop" light, there was no basis for defendant's idea that he need "not look for traffic, (because) I knowed I had the right of way," or for his "thought," after he "saw the other car coming," that plaintiff "was going to stop." Carpentier v. Middlewest Freightways, supra, 259 S.W.2d loc. cit. 819; Cameron v. Howerton, Mo., 174 S.W.2d 206, 208, 210; State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 217–218, 101 S.W.2d 50, 52–53. See also Graham v. Consolidated Forwarding Co., Mo., 221 S. W.2d 733, 734; Hangge v. Umbright, Mo., 119 S.W.2d 382, 384.

By indulging in the "niceties in calculations" [Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787] frequently found to be necessary under the expanded humanitarian doctrine nurtured in this jurisdiction [e.g., De Lay v. Ward, supra, 262 S.W.2d loc. cit. 635–636; Edwards v. Dixon, supra, 298 S.W.2d loc. cit. 469–470; Stout v. St. Louis County Transit Co., supra, 285 S.W.2d loc. cit. 5 (footnote 1)], we have concluded again, as upon the prior hearing, that plaintiff made a submissible case under that doctrine for defendant's failure to stop. Furthermore, plaintiff's sole verdict-directing instruction submitted defendant's *failure to stop and to swerve,* in effect "one compound negligent act." Compare DeVoto v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 355, 358; Douglas v. Whitledge, Mo.App., 302 S.W.2d 294, 303; Thaller v. Skinner & Kennedy Co., Mo.App., 307 S.W.2d 734. It was undisputed that no other vehicles were approaching the Pine-Ninth intersection at the time of the accident under discussion. That, as both plaintiff and her husband said, she had started to swerve to her left prior to the impact was demonstrated by the collision "right almost under" the traffic control signal light in the center of the intersection and by the fact that the *left* front fender of plaintiff's automobile was not damaged when the front end of that automobile struck the left front fender, running board and door on defendant's pickup. With defendant traveling only eight to ten miles per hour when he entered the intersection, the jury reasonably might have concluded that he could and should have swerved his pickup to the right and that such swerving, coupled with the action which the jury reasonably might have found that defendant should have taken to stop his pickup, would have averted the collision. Consult Brown v. Callicotte, Mo., 73 S.W. 2d 190, 193; Gray v. Columbia Terminals Co., 331 Mo. 73, 79, 52 S.W.2d 809, 811; Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 671. And, see also Perry v. Dever, Mo., 303 S.W.2d 1, 7(13); Goggin v. Schoening, Mo.App., 199 S.W.2d 87, 94(7).

Believing, as we do, that plaintiff made a submissible case under the humanitarian doctrine, the judgment for defendant entered upon his after-trial motion is set aside and the cause is remanded with directions to reinstate the judgment for plaintiff upon the jury verdict.

RUARK, J., concurs.

McDOWELL, J., dissents.