ADOLPH HARRELL, Respondent, v. MRS. WILLIAM BERBERICH and WILLIAM BERBERICH, JR., d/b/a BERBERICH'S DELIVERY, Appellants, No. 41245—222 S. W. (2d) 733.

Division Two, July 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, September 12, 1949.

552

*Jones, Hocker, Gladney & Grand, Vincent L. Boisaubin* and *James· C. Jones III* for appellants.

*Leo Murphy, Jr.,* and *Richard M. Stout* for respondent.

554

BARRETT, C.—About 2:30 A. M. on Sunday, August 3, 1947, the plaintiff's taxicab was involved in a collision with the defendants' delivery truck at the intersection of Jefferson Avenue and Pine Street in St. Louis. The plaintiff recovered a judgment of $8,000.00 for his resulting personal injuries, medical expense, lost wages and the virtual destruction of his cab. Upon this appeal the defendants claim that the plaintiff's evidence was insufficient to support his humanitarian negligence submission and that the court erred in instructing the jury upon the humanitarian doctrine. And, they also contend that the court prejudicially erred in the following particulars: in refusing to grant a continuance, in permitting plaintiff's counsel to comment upon the defendants' failure to call a certain police officer and in refusing to permit defendants' counsel to refer in his argument to certain allegations in the plaintiff's petition. Furthermore, the defendants contend that the verdict of $8,000.00 is excessive.

Jefferson and Pine Streets are about the same width, estimated at thirty to fifty feet, and there is a sidewalk ten feet wide on both streets. The plaintiff was proceeding north on Jefferson Avenue at a speed of ten to fifteen miles an hour and the defendants' truck, traveling west on Pine Street at a speed of twenty to twenty-five miles an hour, struck the cab while it was in the northeast quadrant of the intersection. Traffic at the intersection is controlled by automatic

stop-and-go signals and, according to the plaintiff's evidence, the signal light was in his favor as he entered and proceeded through the intersection. The plaintiff did not see the defendants' truck until "it was right at me." Whether Pine Street is thirty or fifty feet wide, it is mathematically demonstrable, if the defendants' truck was traveling at a speed of twenty to twenty-five miles an hour and the plaintiff was traveling at a speed of fifteen miles an hour, that the truck driver could have stopped the truck and, a fortiori, have slackened its speed in time to have avoided the collision.

█ The defendants' argument that the plaintiff failed to make a humanitarian case is based entirely upon the assumption that the plaintiff may not have the benefit of the defendants' evidence in determining whether he made a submissible case. Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2) 600. The plaintiff did not see the defendants' truck until "it was right at me" and one of his witnesses testified that the speed of the truck was forty or fifty or sixty miles an hour. It was the defendants' driver who testified that he could have stopped the truck █ within fifty feet at a speed of thirty miles an hour. But the defendants argue that the plaintiff is bound by the testimony given in his behalf and must have offered evidence that the truck could have been stopped within the distances at speeds of forty to sixty miles an hour. Obviously, in this situation, the plaintiff's case does not come within the rule that he may not have the benefit of the defendants' evidence when it is completely at war with his own positive testimony and the theory of his case. Here the plaintiff did not see the truck until "it was right at me" and, of course, did not testify to its speed and he is not conclusively bound by the unfavorable testimony of his bystander witness whose estimate was "I would say around about forty or fifty or sixty miles an hour," after he had said, "I wouldn't even have any idea; it was running fast, though." Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2) 47. Unquestionably the plaintiff disjunctively submitted his case upon a finding of failure to slacken speed or failure to stop and, therefore, there must have been evidence in support of both specifications of negligence. Ayres v. Key, No. 41,223, 359 Mo. 341, 221 S. W. (2) 719; Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2) 7. But the fact that the truck could have been brought to a complete stop within fifty feet is certainly circumstantial if not direct evidence that its speed likewise could have been sufficiently slackened in the same distance at the same speed.

█ The argument that there was no evidence of the plaintiff's obliviousness and nothing in his conduct to indicate to the defendants' driver that he was unaware of the danger in entering the intersection (Knorp v. Thompson, 352 Mo. 44, 175 S. W. (2) 889) is based upon the assumption that the plaintiff could not use and the jury could

not consider the favorable stop sign in passing upon the plaintiff's obliviousness and imminent peril. Annotation 164 A. L. R. 8, 300-302. But, had the truck driver been observant of the stop-and-go sign he should have anticipated the approach of the plaintiff and the fact that he would proceed in accordance with it. State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S. W. (2) 50; Foulks v. Lehman, (Mo. App.) 17 S. W. (2) 994. The favorable automatic signal is considered not as primary or antecedent negligence but as one of the facts and circumstances for the consideration of the jury from which the jury may have drawn the inference that the truck driver should have discovered the plaintiff and have become aware of his intention to proceed into the intersection in time to have averted the collision. Hangge v. Umbright, (Mo.) 119 S. W. (2) 382. Here the truck driver created the plaintiff's peril by failing to observe the stop sign and this circumstance alone is sufficient to distinguish Yeaman v. Storms, 358 Mo. 774, 217 S. W. (2) 495, as was pointed out in Graham v. Triangle Express & Transfer Co., (Mo.) No. 41,174, 221 S. W. (2) 733. In addition in this case, unlike in Claridge v. Anzolone, 359 Mo. 65, 220 S. W. (2) 32, the jury could find, in the circumstances, that the plaintiff was oblivious and hence the zone of peril was widened. Melenson v. Howell, 344 Mo. 1137, 1146, 130 S. W. (2) 555, 560. There was evidence of the plaintiff's obliviousness and imminent peril and the court's instruction did not grant the jury "a roving commission" on the subject.

■ The defendants' assignment that the court erred in refusing to grant them a continuance arises out of these circumstances: The case was tried on June 10th and 11th, 1948. On the morning of the eleventh the defendants had concluded with their evidence except for a medical witness, Dr. Thieme, and court was recessed to await his appearance. During the recess Dr. Thieme's office informed defendants' counsel that the doctor had become ill and had gone home. The plaintiff would not agree to the reading of the statutory affidavit in evidence and the court refused to continue the cause. Thus the defendants tried the case without medical witnesses and now contend that the court abused its discretion in refusing to continue the cause. Nichols v. Headley Grocer Co., 66 Mo. App. 321.

However, the cause was originally set for trial in April and was continued because defendants' counsel were engaged in ■ the trial of a case in Belleville, Illinois. The cause was then set for trial on May 24th and was continued because of the absence of a witness, presumably the truck driver. The case was again reassigned and finally placed at the head of the docket for trial on June 10th. It was not until the case had been set for trial the week prior to June 10th that the defendants had requested a medical examination of the plaintiff. At the request of defendants' counsel, about June 1st or 2nd, Dr. Thieme examined the plaintiff and made a report to the

defendants of his findings. The doctor was not under subpoena, the defendants did not request another medical examination of the plaintiff during the noon recess or offer to take and use Doctor Thieme's deposition. None of these matters are conclusive but, all the circumstances considered, the trial court did not abuse its discretion in refusing to declare a mistrial or grant a continuance. 17 C. J. S., Sec. 47, p. 225.

■ The defendants contend that the court prejudicially erred in permitting plaintiff's counsel, in his argument, to unfavorably comment upon the defendants' failure to call as a witness a policeman —a witness equally available to both parties. Atkinson v. United Rys. Co., 286 Mo. 634, 641, 228 S. W. 483; annotation 135 A. L. R. 1375. The witness was one of two policemen who made some investigation of the collision and procured the names of at least three witnesses who testified for the defendants. It may be assumed for the purposes of this opinion that the witness was equally available and that it was prejudicial error if plaintiff's counsel in fact violated the rule. Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S. W. (2) 506, 513-514. But it is not plainly demonstrable upon this record that the rule was in fact violated and in the circumstances the court's ruling was not prejudicially erroneous. Burow v. Red Line Service, Inc., 343 Mo. 605, 610, 122 S. W. (2) 919, 922. The plaintiff is a Negro and the collision occurred in a negro district. A large number of people appeared upon the scene, all of them Negroes except the truck driver and the four witnesses, three of them employees of Union Electric Company, called by the defendants. The plaintiff's witnesses, all Negroes, claimed that they offered their names to the policemen but the policemen declined to take them, saying that it was not necessary. The three witnesses for the defendants, particularly one of them, said that they gave their names to someone and that "if he was a policeman, he was a plain-clothes man." Both policemen were subpoenaed by the defendants and when the first one was called it developed that he was a "beat cop" and not a "plain-clothes man." He denied the implication that the policemen had refused to take the names of any witnesses other than white people. Counsel's entire argument is not set out in the record but the part now complained of is this:

"I think that the evidence in this case regarding those police officers while it is not important is somewhat interesting. The witnesses the police officers supposedly got said the police officer was a plain-clothes man, and the police officer himself, one of them, said he was a beat cop. Beat cops are always in uniform, and then the other police officer didn't even come in here and they had his name, they got his name yesterday. . . . And is it reasonable that if there is an accident at Jefferson and Pine Street at two o'clock in the morning that the only witnesses the

white policeman gets was the only three white men shown to be in the neighborhood plus the other man who is working for the same company that the defendant here works for, the Berberich Company, works for the Post-Dispatch, and that insurance man works for the Post-Dispatch, he said his office is in their building.''

When the entire argument is considered in its background it is not, plainly, a violation of the equally available rule and the court did not abuse its discretion or prejudicially err in refusing to restrain the argument.

█ The defendants contend that the court prejudicially erred in restraining their counsel's argument in that he was [737] denied the right to read certain portions of the petition upon which the cause was tried to the jury as admissions against interest. It is not pointed out here just what the admission was but the inference from the argument is that it was the primary charge of negligence that the truck driver had ignored the stop sign. Counsel said: ''Now, then, he says you need no longer concern yourselves about the stop light, and I was rather surprised that he abandoned that charge about the stop light, because it said in his petition, the petition upon which this suit is based . . .'' At this point an objection was sustained upon the ground that the petition had not been referred to in the evidence. It is not necessary, now, to say whether the petition must have been offered in evidence before counsel could refer to it in his argument. Compare: Hildreth v. Hudloe, (Mo. App.) 282 S. W. 747 and Wahl v. Cunningham, 332 Mo. 21, 39-41, 56 S. W. (2) 1052, 1059 and the annotations 14 A. L. R. 22, 89; 90 A. L. R. 1393. Neither is it necessary to say whether the abandoned charge of primary negligence concerning the stop light, contrasted with the humanitarian submission, was in fact an admission against interest. Immediately following the court's ruling defendants' counsel said:

''. . . Mr. Stout has started off in his opening statement by pleading that the stop light was in his favor, he produced witnesses to testify that the stop light was in his favor but in the case as submitted to you he does not submit it on that and the limit of his recovery is based upon the humanitarian doctrine, about which I will have a few words to say but before I get to that point let me stop on that and just say a little bit about that stop light . . .''

Thus defendants' counsel did argue the identical point and in fact told the jury all that he sought to show by reading from the petition and the court's ruling against him was, therefore, not prejudicially erroneous. In re Thomasson's Estate, 347 Mo. 748, 761, 148 S. W. (2) 757, 765; Mo. R. S. A., Secs. 847.123; 847.140(b).

█ In contending that the verdict is excessive the defendants say that the plaintiff's only disability is from traumatic bursitis or

"scrub-woman's knee" and that there is no evidence that the plaintiff's injuries will interfere with his work. But, in addition to his personal injuries, the plaintiff proved that the damage to his cab was $1,155.00; there was medical expense of $225.00 and $250.00 lost earnings. Furthermore, the plaintiff's doctor testified that his injuries consisted of a number of cuts on the head and arms, abrasions on both knees and the left shoulder. There were several pieces of glass in his right hand and in his face, with a deep cut over his eye. The doctor testified that the injury to the right knee was permanent. He also said that the plaintiff had torn or dislocated intervertebral discs, "a separation of the cartilaginous connection between the intervertebral bone," between the second, third and fourth lumbar vertebrae. The plaintiff is thirty-one years of age and with special damages of over $1,600.00 it is not possible upon this record to say that the verdict of $8,000.00 is excessive even though the evidence of serious permanent injury is not particularly satisfying. Prichard v. Dubinsky, 338 Mo. 360, 89 S. W. (2) 530; Mahan v. Baile, 358 Mo. 625, 215 S. W. (2) 92, 97.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.