Samuel Guy STEELE, Plaintiff-Appellant,

v.

Claus Herman GOOSEN, Defendant-Respondent.

No. 47265.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

A. W. Landis, West Plains, Neale, Newman, Bradshaw, Freeman & Neale, Jean

Paul Bradshaw, Donald J. Hoy, Springfield, for appellant.

Fred F. & Robert L. Wesner, Sedalia, and William J. Cason, Clinton, for defendant-respondent Claus Herman Goosen.

DALTON, Judge.

Plaintiff's petition contained three counts wherein he sought to recover a total of $78,000 for personal injuries, property damage and for loss of services of plaintiff's wife, all as sustained in a collision between the automobiles of plaintiff and defendant. Defendant filed a counterclaim for $15,475 for personal injuries and property damage sustained in the same collision. The court on motion dismissed the third count of plaintiff's petition for property damage and plaintiff settled the second count for loss of services. Verdict and judgment were for defendant on the first count of plaintiff's petition and for plaintiff on defendant's counterclaim. Both parties have appealed but defendant has not perfected his appeal.

The collision occurred about 10:30 a. m., on December 22, 1954, on U. S. Highway No. 65 south of Lincoln in Benton County. The highway extends north and south and is paved with concrete 18 feet in width. It is straight and nearly level, with a slight upgrade to the north. A dip in the highway begins some 900 feet south of the point of collision, and about ¼ mile south "a car goes out of sight" of a person at the point of collision. The weather was clear and the pavement dry. Plaintiff was driving his 1954 Cadillac north on the east side of the pavement at a steady speed of 50–55 miles per hour. The car had been driven a few months and its power brakes, steering gear and horn were in good operating condition. According to plaintiff, there was no fog and visibility was good. For a number of miles the plaintiff had been driving 400 to 500 feet behind a northbound tractor-trailer truck.

As plaintiff was driving north, the defendant was driving his 1946 Plymouth (with a small 5 foot trailer attached) south on the west side of the same highway. Defendant was intending to turn left into the Wischmeier private driveway on the east side of the highway. When defendant reached the vicinity of the driveway, he saw southbound traffic behind him, as well as northbound traffic approaching from the south, so he pulled off the concrete and onto the west shoulder of the highway opposite the driveway entrance and waited for the traffic to pass. Defendant testified that his car windows were up and "the windshield (sic) going." He had driven through some fog that morning, but "it was not the same" as when the collision occurred. He had his lights turned on dim, having turned them on when he left his home. There was fog on the highway to the south "towards the holler," when he stopped on the west shoulder. He could see approximately 200 feet to the south, "something in the neighborhood of that as near as I could get at it." Defendant offered several witnesses who testified to the presence of fog on the highway south of the point of collision and they said the view in that direction was limited to approximately 200 feet.

When defendant stopped on the west shoulder of the highway, he saw a large truck approaching from the south and he waited for it to pass. When it passed, he carefully looked both north and south and saw no traffic approaching from either direction. He immediately gave a hand signal for a left turn and began the gradual execution of a left-hand turn, straight across the highway, to enter the Wischmeier driveway. He did not see plaintiff's automobile approaching at any time before the collision. The collision occurred when the front bumper of the Plymouth was just off the east side of the concrete slab and at a time when defendant's automobile and trailer extended completely across the concrete highway. Perhaps 3 or 4 seconds elapsed from the time he started until he crossed the center line of the highway. There was a drainage device on each side

of the highway a short distance south of the point of collision. These devices extended across the respective shoulders of the highway and the spillways were about 8 feet wide at the edge of the slab, were about 4 inches deep and sloped toward the ditches on the sides of the highway.

As stated, the plaintiff was driving 400 to 500 feet behind the mentioned "big truck." He further testified that he saw defendant's car stopped on the west shoulder of the highway as the "big truck" was even with or beyond defendant's car. There was no fog present and no obstruction of any kind on the highway to prevent plaintiff from seeing defendant's car, or to prevent defendant from seeing plaintiff's car, since the road was straight and nearly level for a quarter of a mile, and plaintiff saw defendant's car "at all times." When parked, it looked like the left front wheel was on the pavement. At that time defendant had given no signal whatever of any intention to turn left. Later, plaintiff saw the hind wheels of defendant's car "dig in" and "spin," but he didn't connect that with an intention on defendant's part to cross, rather than to proceed south on the highway. "Just seconds after" the "big truck" passed defendant's car, plaintiff recognized that defendant "was moving up slow" into defendant's own southbound lane. Plaintiff was then possibly 250 feet south of defendant's car and he put his foot on his brakes. When plaintiff was from 150 to 200 feet south of defendant's car, and while defendant was still in the southbound lane, the defendant made "a short turn * * * pulled right over across the center of the road and pulled across in front of me." No signal was given by arm, horn or light of an intention to cross to the east side of the highway. The first notice plaintiff had of a left turn was when defendant "just turned right into my part of the lane * * * right up in front of me." When plaintiff applied his brakes they took hold immediately and 90 feet of skid marks were left on the pavement. Plaintiff did not swerve until about within 2 feet of the point of collision. He did not sound his horn. Plaintiff estimated defendant's speed in crossing the northbound lane at 10 to 15 m. p. h. The collision occurred when defendant's front bumper was 8–12 inches east of the east edge of the concrete.

As admissions against interest, defendant offered parts of plaintiff's deposition that he was approximately 500 feet behind the "big truck" and saw defendant's car from a distance of 600 to 700 feet, and before the "big truck" reached defendant; and when within possibly 300 feet, or 250 feet of defendant, the plaintiff "for safety precaution * * * put on the brakes," as defendant's car started to move; and that plaintiff began to apply his brakes 250 feet south of defendant's car, when defendant's car occupied and blocked 25% of the northbound traffic lane. Plaintiff was within 250 feet of defendant's car when defendant obstructed plaintiff's portion of the road and plaintiff first started applying his brakes for safety sake, but not enough to skid. When defendant's bumper was 18 inches from the east edge of the pavement and plaintiff was 200 feet away, the plaintiff first applied his brakes with the intention of stopping.

Defendant also offered evidence to show that, including reaction time, at 50 m. p. h. plaintiff's car could have been stopped in 181 feet and at 55 m. p. h. in 214 feet. Both plaintiff and defendant sustained serious injuries.

Plaintiff's Instruction No. 1 submitted a finding of defendant's negligence in driving from the west shoulder onto the highway and into the path of plaintiff's automobile when plaintiff's automobile was approaching "so close as to constitute an immediate hazard" and at a time when the highway "was not sufficiently free from approaching vehicles to permit defendant to cross * * * without danger of collision." Defendant's Instruction No. 8 submitted a finding of plaintiff's contributory negligence, if plaintiff saw or by keeping a vigilant lookout ahead could have seen defendant's

automobile "moving from the west lane * * * eastwardly and across the highway ahead of him toward the Wischmeier driveway and that thereafter, plaintiff * * * upon the first appearance of danger, could with the means at hand and with safety to himself, his passenger and his automobile have avoided the collision described in evidence by slowing and stopping his automobile, but failed to do so * * *." Defendant's Instruction No. 10, submitted defendant's theory of the case and directed a verdict for defendant on his counterclaim upon a finding of plaintiff's humanitarian negligence in failing to stop his automobile and avoid injuring defendant. Defendant's Instruction No. 9 submitted in the disjunctive the question of plaintiff's contributory negligence as to speed, failure to change course, slacken speed or stop.

Plaintiff-appellant assigns error on the trial court's refusal to give Instruction "A," which was based on the premise that defendant was negligent as a matter of law in turning across the highway in front of plaintiff's automobile " * * * at a time when plaintiff's automobile was approaching said point and was so close thereto as to constitute an immediate hazard * *." Compare Sec. 304.021, Laws 1953, p. 587, V.A.M.S. The instruction would further have directed a verdict for plaintiff upon a finding by the jury that such negligence of defendant was the direct and proximate cause of the collision and plaintiff's injuries and "that plaintiff was at all times in the exercise of the highest degree of care for his own safety."

Appellant insists that defendant was guilty of negligence as a matter of law as submitted in said instruction; that "plaintiff's automobile *must have been within defendant's range of vision at the time* of, or immediately after he 'started up from the shoulder'"; and that "by refusing to give this instruction, the trial court permitted the jury to determine whether or not defendant was *negligent in blocking the entire travelled portion of the highway* in the act

of traveling from the west shoulder thereof to a private drive adjacent to the east side." (Italics ours.)

It is apparent that defendant could not take his 16 foot Plymouth automobile and 5 foot trailer across the 18 foot paved highway without blocking the entire traveled portion of the highway and negligence in blocking the highway was not an issue in the case. The question is whether, at the time defendant entered upon the concrete slab in order to cross over, the plaintiff's automobile was approaching so fast and so close as to constitute an immediate hazard. If it was not, defendant had the right-of-way and it is immaterial whether he could have completely crossed over and cleared the highway before any approaching traffic could have reached the spot. In other words, if defendant properly entered upon the traveled portion of the highway in the apparent act of crossing over at a time when approaching traffic did not constitute an immediate hazard, he had the right-of-way and there was no negligence in blocking the highway. Approaching traffic was required to recognize the obstruction of his vehicle and trailer and to slow up or stop on account thereof. Further, it is wholly immaterial whether or not plaintiff's automobile was within defendant's range of vision at the time of, or immediately after defendant started across the traveled portion of this highway, since the question is did plaintiff's approach constitute an immediate hazard, not whether defendant saw or could have seen plaintiff's approaching automobile, since on plaintiff's testimony his Cadillac could have been seen for more than 900 feet and at a time when it did not constitute an immediate hazard. Appellant further argues that on defendant's own testimony he was guilty of "gross violation of the rules of the road"; and that "defendant was bound to anticipate 'the presence and movement' of automobiles south of the 'patch of fog' and was not at liberty to block the entire highway simply because he could see only 200 feet south."

■ Instruction "A" was properly refused. The 200 feet mentioned was a mere estimate as clearly appears from defendant's testimony and so was his statement as to the lapse of time in reaching the east half of the highway. He said he "couldn't just estimate" the time, but that he "drove gradually to get in across," it could have been 3 or 4 seconds. As stated, defendant testified that, with his lights on dim and his windshield wipers operating, he was stopped on the west shoulder of the highway waiting for traffic to pass and when the "big truck" passed, he carefully looked both ways, "seed" nothing and immediately gave a hand signal for a left turn and started across to the left. Plaintiff's testimony that he saw the wheels of defendant's automobile "dig in" and "spin" and that defendant's automobile was moving at 10 to 15 m. p. h. immediately before the collision was not necessarily in conflict with defendant's estimate of lapsed time in making the turn. Defendant was also entitled to the benefit of plaintiff's prior admissions against interest that he was then traveling 500 feet behind the truck and other favorable evidence not in conflict with his own testimony and his own theory of the case. There was no testimony that one outside the fog patch could see an object in a fog as well as one in the fog could see an object outside of it, and defendant was entitled to a favorable view of his own evidence. Appellant cites Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, where a truck driver turned left without warning 125 to 150 feet in front of an approaching automobile traveling at 50–55 miles an hour and a collision occurred in two seconds from the time he began his left turn. Appellant also cites Schmidt v. Allen, Mo.Sup., 303 S.W.2d 652, 658(13, 14) and other cases to the effect that "in determining negligence 'all of the circumstances and the natural reactions and conduct to be expected of ordinary people in a given situation must be considered' * * *"; and that "the presence and movement of others on the highway must be anticipated." These cases do not support appellant's position that the court erred in refusing to give Instruction "A".

■ Defendant was not negligent as a matter of law, unless his own testimony conclusively established the negligence charged against him and so clearly showed his negligence that different minds could not reasonably draw different conclusions from the facts stated by him. Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, 1051(13). Whether defendant was negligent in making the left turn and whether plaintiff's approaching automobile was so close thereto as to constitute an immediate hazard were questions for the jury.

■ Appellant next contends that the court erred in giving Instruction No. 9 with reference to plaintiff's alleged contributory negligence. Appellant says "the evidence simply did not support the disjunctive submissions of (1) speed, (2) failure to change course of automobile, (3) failure to slacken speed, and (4) failure to stop." Since the submissions were in the disjunctive, each ground of contributory negligence must be supported by substantial evidence. Harrell v. Berberich, 359 Mo. 551, 222 S.W.2d 733, 735. Appellant argues that, since there were concrete spillways on each side of the highway immediately south of the place of the collision and defendant's automobile and trailer obstructed the entire pavement and both shoulders at the time of the collision, there was no evidence that plaintiff could with safety have changed the course of his automobile; that defendant necessarily relied on plaintiff's testimony that there was no fog and that plaintiff saw defendant's car when he was in excess of 200 feet south of the point of collision to support the submission of failure to stop and failure to slacken speed; that, on the issue of negligent speed, defendant had to rely upon his own and his witnesses' testimony as to the presence of fog on the highway south of the point of collision; and that defendant could not rely on evidence of plaintiff, which contradicts his own.

We find no evidence in the record that plaintiff could not have driven across either drainage device with safety, although the evidence shows a 4 inch drop or drain therein. There was evidence that a vehicle could be driven with safety on the shoulders of the highway south of the Wischmeier driveway.

In determining the assignment of error under consideration here, we notice that there is no contention here by appellant that the court erred in giving defendant's Instruction No. 8, submitting the issue of plaintiff's negligent failure to stop or erred in giving defendant's Instruction No. 10 submitting defendant's counterclaim and the issue of plaintiff's alleged humanitarian negligence in failing to stop and avoid striking defendant's automobile. In fact plaintiff joined in the submission of that issue by asking for and having the court give plaintiff's Instruction No. 3, before any instructions had been given by the court on defendant's behalf. This instruction told the jury that "the burden is upon defendant in this case to prove the charge of negligence set out in his counterclaim, and that before he can recover on said counterclaim he should show by a preponderance or greater weight of the evidence that he was in a position of imminent peril on the highway at the time and place mentioned in the evidence, if so, and that plaintiff saw him in such a position of imminent peril or by the exercise of the highest degree of care could have seen him, in time thereafter to have stopped his vehicle which he was driving, with the means and appliances at hand, and without injury to himself or his wife who was a passenger in plaintiff's vehicle, if so, in time to have avoided striking the defendant's automobile; and, unless you so find, you should find the issues in favor of plaintiff and against the defendant on defendant's counterclaim."

■ The giving of the above instruction under the circumstances stated presupposes the existence of evidence in the record to sustain it. If this instruction is supported by substantial evidence, as the plaintiff necessarily conceded by offering it, it follows that the issue of negligent failure to stop in Instruction No. 9 is also supported by substantial evidence and we further find that the evidence in the record, as hereinbefore reviewed, does support the submission of the issue of the negligent failure of plaintiff to stop and avoid a collision with defendant's automobile after plaintiff saw or could have seen defendant in imminent peril on the crossing. Since there was evidence of negligent failure to stop, the same evidence supports the issue of negligent speed, as plaintiff could have stopped but didn't and negligently continued to operate his automobile at an excessive speed and was negligent, under the circumstances shown, up until the collision occurred. Direct testimony was unnecessary to make a submissible issue of speed, since it may be shown by circumstances. Wood v. Claussen, Mo.App., 207 S.W.2d 802, 808. Appellant cites Pitts v. Garner, Mo.Sup., 321 S.W.2d 509, 514, but in that case the court said: "The issue of liability in this case is not to be confused with the issue of submissibility." Only submissibility is involved here. If plaintiff could have stopped after he saw or by the exercise of the highest degree of care could have seen defendant in imminent peril on the highway ahead of him, it follows that he could also have slackened speed or changed the course of his vehicle and have avoided the collision. Harrell v. Berberich, supra, 222 S.W.2d 733, 735; Hillis v. Rice, Mo.App., 151 S.W.2d 717, 724. While excessive speed and failure to slacken speed are two distinct and separate assignments of negligence (Stroh v. Johns, Mo.Sup., 264 S.W.2d 304, 306 [2]) it does not follow that the evidence necessary to support a charge of negligent failure to stop may not also support an assignment of negligent speed and negligent failure to slacken speed. See Harrell v. Berberich, supra; Hillis v. Rice, supra. Appellant further contends that defendant could not have the benefit of plaintiff's tes-

timony "concerning his ability to stop or slow beyond 200 feet," because defendant's testimony was in direct contradiction of plaintiff's testimony. Appellant cites Bean v. St. Louis Pub. Serv. Co., Mo.App., 233 S.W.2d 782, 786(7); Fisher v. Gunn, Mo. Sup., 270 S.W.2d 869, 870(3–5); and Napier v. Ferris, Mo.App., 159 S.W.2d 364, 367(2). These cases support the rule that one will not be permitted to avail himself of his adversary's evidence which is wholly inconsistent with his own and contradictory to the fundamental theory of his case. While defendant testified as to this so called "patch of fog," neither his defense, nor his counterclaim were directly based thereon, nor did such fact constitute an essential basis of either his defense or his counterclaim. Defendant did not contradict plaintiff's testimony as to plaintiff's operation of his automobile at between 50 and 55 m. p. h., nor did the defendant or defendant's witnesses say that plaintiff did not see or could not have seen defendant when he, plaintiff, was more than 200 feet south of the place of collision. With the evidence as to stopping distances, the defendant could make out a case for the jury on the issue of negligent speed from plaintiff's own testimony at the trial and his admissions against interest as to matters on which defendant did not testify. On swerving, the parties agree that not more than one foot of the east shoulder was occupied at the moment of collision and the west shoulder was being vacated. We think the defendant made a case for the jury on each of the assignments of contributory negligence submitted, independent of any testimony of the plaintiff which the defendant denied.

Appellant further contends that Instruction No. 9 did not sufficiently hypothesize the facts essential in law to support a verdict against plaintiff *on the issue of speed*; and that it gave the jury a "roving commission" to determine that issue. Appellant says "the existence of the 'patch of fog' should have been hypothesized"; and that the instruction "was fatally erroneous for failing to hypothesize the es-

sential issue involving the 'patch of fog' concerning which there was 'two or more divergent sets of essential facts.' " No other disputed fact issue is relied upon by appellant. Appellant cites Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 977 (where a general submission of speed without hypothesization of facts was approved); Levin v. Caldwell, Mo.Sup., 285 S.W.2d 655, 660; and other cases.

Instruction No. 9 submitted a finding that plaintiff "failed to exercise the highest degree of care for his own safety while operating his Cadillac automobile northwardly on Highway No. 65 on the occasion described in evidence * * *: 1. In operating his automobile at a high, dangerous and excessive rate of speed under the circumstances then and there existing and as shown in evidence * * *."

Appellant insists that "it was defendant's factual theory on the issue of speed that because of this 'patch of fog' plaintiff should have been driving at a much less rate of speed"; and that this "patch of fog" was "the only circumstance which would make a submissible issue out of plaintiff's admitted speed."

We do not find the existence or nonexistence of the so-called "patch of fog" to be an essential fact or circumstance necessary to "make a submissible issue out of plaintiff's admitted speed." While there was conflicting evidence as to the existence of fog beginning approximately 200 feet south of the Wischmeier driveway, all agree that there was no fog or lack of visibility on account of fog which interfered or impeded the operation and management of plaintiff's automobile from a point approximately 200 feet south of the Wischmeier driveway to the driveway where plaintiff's automobile came into collision with the automobile of defendant.

The speed at which plaintiff was driving was not in dispute and there was no conflict as to stopping distances. Plaintiff admitted his prior testimony as to the

circumstances he saw before him, which were not disputed by defendant, except as to defendant's signal for a left turn. Most of the circumstances appeared from plaintiff's testimony and were not denied by defendant. Whether a mentioned speed is high, dangerous and excessive depends upon the condition of the highway and the surrounding facts and circumstances. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(9, 10). A case was made for the jury on negligent speed by plaintiff's admissions and testimony as to facts and circumstances existing north of the "patch of fog." Under such circumstances, there being only one fact issue in dispute and that fact not being essential of defendant's defense on the issue of plaintiff's negligent speed, we think the rule stated in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501, should apply, tcwit: " * * * that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction." Plaintiff having failed to do so, may not now complain. The assignment is overruled.

Did the court err in dismissing Count III by which plaintiff sought to recover $2,000 for collision damage to his automobile? Defendant's motion to dismiss was sustained on the ground that plaintiff was not the real party in interest. It was shown that the cost of repairs to the automobile was $1,015.27; that plaintiff's insurance carrier paid plaintiff $965.27; and that plaintiff signed a document to the Western Fire Insurance Company. The pertinent portion of the mentioned document signed by plaintiff stated: "And in consideration of said payment the insured hereby assign and transfer to the said Company each and all claims, rights and demands against any person, persons, corportion or property arising from or connected with such loss or damage, and said Company is subrogated in the place of and to the claims and demands of the insured against such person,

persons, corporation or property in the premises who may be liable or hereafter adjudged liable for the burning, theft, destruction or damage to said property to the extent of the amount hereby paid." Appellant says that "the 'assignment' executed by plaintiff was not effective to assign his entire cause of action for the property damage"; and that it "does not foreclose plaintiff from bringing an action in his own name, even if he assigned his entire cause of action for the property damage." Appellant admits that the trial court's ruling was based in part on this court's decision in General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396. Appellant cites Baker v. Fortney, Mo. App., 299 S.W.2d 563, 564. Neither of the mentioned cases support appellant's position.

Defendant-respondent refers to the document signed by plaintiff as an "assignment and subrogation agreement," and respondent contends that "plaintiff assigned his entire cause of action as distinguished from the proceeds of the cause of action and therefore divested himself of both legal and equitable title to this cause of action"; that the Western Fire Insurance Company is the real party in interest and it was "a necessary party to the cause of action sought to be asserted" in Count III; and that "any amount over and above the amount paid by the insurance company belongs to the insured," since the insurance company, although having been assigned the entire cause of action, is subrogated only "to the extent of the money hereby paid." Respondent cites General Exchange Ins. Corp. v. Young, supra, and State ex rel. Hotel Phillips v. Lucas, 365 Mo. 512, 284 S.W.2d 452. The court's order of dismissal is affirmed. The document signed by plaintiff constituted an assignment to the insurer of plaintiff's entire claim for property damage, although, as the policy provided, plaintiff received $50 less than the cost of repairs to his automobile. General Exchange Ins. Corp. v. Young, supra, 212 S.W.2d 396, 401. It is immaterial to any of the issues here that

the document signed by plaintiff limits the insurer's subrogation rights "to the extent of the amount hereby paid."

Appellant further assigns error on the admission in evidence of defendant's Exhibit No. 4, consisting of a motion picture film taken of plaintiff, while engaged in various tasks (operating a tractor, raking hay, receiving bales of hay from a baler, etc.) approximately 3½ years after the collision in question and some three weeks before the trial. The exhibit was offered and admitted on the theory of impeachment of plaintiff's testimony concerning his disability resulting from his injuries. Appellant says the film served no useful or instructive purpose; that it was highly prejudicial and had a sensation-creating effect; and that the trial court abused its discretion in admitting the exhibit into evidence. Appellant admits that the major portion of the exhibit shows plaintiff engaged in various tasks which plaintiff testified he was able to perform, but appellant contends the exhibit "did not serve to prove or disprove any issue in the case," nor "reveal or demonstrate any matter which could not have been adequately shown by the photographer's own testimony." Appellant says "the portions of the film which were relevant (but at the same time noninstructive) did not justify the display of the entire exhibit to the jury when the inflammatory and prejudicial and sensation-creating effect far outweighed its relevant aspects." Defendant was not bound by plaintiff's admissions nor bound to accept them as sufficient, he could make his proof in any legitimate manner. Ruppel v. Clayes, 230 Mo.App. 699, 72 S.W.2d 833, 835. Appellant says the major portion of the exhibit shows plaintiff engaged in activities about which there was no dispute; and that, the man in a part of the film, identified by the witness as the plaintiff, was not the plaintiff. Appellant complains because the pictures were taken at a distance so far removed that the person cannot be identified in the film itself. There is no question here that the film was not prop-

erly identified as a correct representation of plaintiff's activities and of his ability to do certain work. The fact that "the prejudicial and sensation-creating effect of this exhibit was over-whelming," was no bar to its admission, if it constituted relevant, material and instructive evidence tending to defeat plaintiff's recovery, as it did. No abuse of discretion appears. Morris v. E. I. Du Pont De Nemours & Co., 346 Mo. 126, 139 S.W.2d 984, 987; Ledkins v. Missouri-Kansas-Texas R. Co., Mo.Sup., 316 S.W.2d 564, 571(12); Richardson v. Missouri K. T. R. Co., Tex.Civ. App., 205 S.W.2d 819, 824.

The judgment is affirmed.

All concur.